UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZEBIB KILFLAY MENGUSTU-MEBREHATU,

Petitioner,

v.

TODD BLANCHE et al.,

Respondents.

CASE NO. 2:26-cv-03562-DGE

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Zebib Kiflay Mengustu-Mebrehatu's petition for writ of habeas corpus. (Dkt. No. 1.) Having reviewed the petition, the response (Dkt. No. 20), the reply (Dkt. No. 25) and all supporting materials, the Court GRANTS Petitioner's writ of habeas corpus.

## I. BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Eritrea. (Dkt. Nos. 11 at 1; 21 at 2.) Petitioner fled Eritrea following a "frightening and difficult detention," and entered the United States without

inspection near Hidalgo, Texas on September 7, 2008. (*Id.*) Petitioner was detained and issued a Notice to Appear placing her in removal proceedings and charging her as inadmissible to the United States pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Dkt. No. 21 at 2.) On December 18, 2008, Petitioner was released on bond. (*Id.*) On July 21, 2009, an Immigration Judge ("IJ") ordered Petitioner removed to Eritrea. (*Id.*) On August 19, 2009, Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (*Id.*) On May 21, 2011, Petitioner left the United States and crossed into Canada. (*Id.*) On June 30, 2011, the BIA sustained Petitioner's appeal, vacated the IJ's decision, and remanded the case to the Immigration Court. (*Id.* at 3.) On January 3, 2013, Petitioner was ordered removed in absentia after she failed to appear for an Immigration Court hearing. (Dkt. Nos. 21 at 3; 23-1 at 2.)

On February 12, 2020, Petitioner re-entered the United States near Blaine, Washington. (Dkt. No. 21 at 3.) Petitioner was detained by the United States Border Patrol ("USBP") and transported to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") for re-instatement of her prior removal order. (Dkt. Nos. 21 at 3; 23-2 at 2.) On March 10, 2020, following a reasonable fear interview, United States Citizenship and Immigration Services ("USCIS") determined that Petitioner had a reasonable fear of returning to Eritrea, and Petitioner was placed in a withholding only proceeding with the Immigration Court. (Dkt. No. 21 at 3.) On April 27, 2020, IJ Tammy Fitting granted Petitioner's application for withholding of removal to Eritrea. (Dkt. No. 23-3 at 2.) Petitioner was released on an order of supervision. (Dkt. No. 23-4.) Since then, Petitioner has lived and worked lawfully in the United States. (Dkt. No. 10 at 1–2.) At the time she was detained, Petitioner was working two jobs driving buses. (*Id.* at 3, 7.)

On approximately September 18, 2026, Petitioner states she "received a message from an immigration official, saying they wanted to talk about [her] work permit." (*Id*. at 3.) Petitioner then received a message to appear at the Seattle Immigration and Customs Enforcement ("ICE") office on September 21, 2026. (*Id.*) Apparently, on September 19, 2026, Respondents obtained approval to remove Petitioner to Cameroon, having received diplomatic assurances that Petitioner would not be subject to persecution or torture in that country. (Dkt. Nos. 21 at 4; 22 at 1–2.)[1] And by September 20, 2026, the Department of Homeland Security ("DHS") had issued a I-200 "Warrant for Arrest of Alien" for Petitioner. (Dkt. No. 23-7.) This was after Seattle Enforcement and Removal Operations ("ERO") had confirmed that Petitioner was "unlawfully present in the United States" and that she "has no pending or approved immigration applications that would authorize her to remain in the United States" (Dkt. No. 23-6 at 3)—conclusions that appear in conflict with Petitioner's grant of withholding of removal which allows Petitioner to remain in the United States and provides for work authorization. *See* 8 C.F.R. § 274a.12(a)(10).

Petitioner appeared as directed on September 21, 2026. (Dkt. Nos. 11 at 2–3; 23-6 at 3.) Respondents informed Petitioner her prior Order of Supervision was revoked, that she would be taken into custody, and that she would be removed to Cameroon. (Dkt. No. 23-6 at 3–4.) The Notice of Revocation stated only that Respondent had "the ability and means to effectuate" her removal and that her "case [was] under review for removal to an alternate country." (Dkt. No. 23-5 at 2.) Petitioner declares she informed Respondents she opposed being sent to Cameroon

[1] Respondents rely on the declarations of two removal officers, but do not provide any documentary evidence identifying the scope of these diplomatic assurances. At most, Respondents provide a statement from an Acting Unit Chief within the Removal Management Division of Immigration and Customs Enforcement stating that on "January 7, 2026, the Department of State Determined that these diplomatic assurances were credible and reliable." (Dkt. No. 22 at 2.)

and that she was worried about her safety. (Dkt. No. 11 at 4.) Respondents assert, through a deportation officer who does not identify he interacted with Petitioner on September 21, 2026, that Petitioner did not provide any statements, did not identify any objection and did not provide any documents in response to being informed she would be sent to Cameroon. (Dkt. No. 21 at 4–5.)

**B. Procedural History**

On September 22, 2026, Petitioner filed her petition for writ of habeas corpus (Dkt. No. 1), a motion for a temporary restraining order ("TRO") (Dkt. No. 2), and a motion to appoint counsel (Dkt. No. 3). The same day, the Court denied as moot Petitioner's motion for a TRO because Petitioner's counsel was unable to confirm the date of her planned removal. (Dkt. No. 5.) Shortly thereafter, Respondents filed a Notice of Intent to Remove Petitioner within 48 hours. (Dkt. No. 7.) On September 23, 2026, the Court granted Petitioner's motion to appoint counsel and appointed Assistant Federal Public Defender Rebecca Fish to represent her. (Dkt. No. 8.) The same day, Petitioner filed a renewed motion for a TRO based on the Notice of Intent to Remove, which the Court provisionally granted. (Dkt. Nos. 10, 12.) On September 24, 2026, the Court granted a stipulated motion setting a briefing schedule and ordered Respondents not to remove Petitioner while her habeas petition is pending. (Dkt. No. 15.)

Petitioner argues due process bars her re-detention and removal to a third country without notice and an opportunity to be heard. (Dkt. No. 1 at 12–20.) Petitioner further contends that her continued detention violates due process because there is no significant likelihood of removal in the reasonably foreseeable future and argues she should be released pursuant to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 10–12.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III. DISCUSSION

### A. Third Country Removal

Where the government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar v. Wamsley*, Case No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third

country. *Id.* The government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Numerous courts in the Ninth Circuit have found if a noncitizen claims fear of removal to a designated third country, the government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.") (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)); *A.A.M. v. Andrews,* 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025) ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator."); *Baltodano v. Bondi*, Case No. C25-1958RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Oct. 23, 2025); *Y.T.D. v. Andrews*, Case No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sep. 18, 2025) ("On balance, on this record, the Court finds that there is a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal to warrant imposition of an injunction requiring additional process."); *Aden*, 409 F. Supp. 3d at 1010 ("ICE's attempt to remove Petitioner to Somalia without notice, much less an opportunity to be heard, violated petitioner's due process rights."). In *Nguyen*, the court found that ICE's current third country removal policy "contravenes Ninth Circuit law." 796 F. Supp. 3d at 726. The *Nguyen* court also found that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* at 727 (quoting *Aden*, 409 F. Supp. 3d 1009).

Here, Petitioner cannot be removed to Eritrea. (Dkt. No. 23-3 at 2) (granting withholding of removal to Eritrea). Petitioner fears removal to Cameroon, citing recent reporting from the *New York Times* which indicates Cameroonian officials are indefinitely detaining third-country deportees at a compound and coercing them to return to their home countries, where they may face persecution or torture. (Dkt. No. 1 at 8–10, 28–33.) Petitioner claims she has heard stories of other Eritrean nationals deported from the United States to third countries in Africa, only for those countries to return these individuals to Eritrea, where they were imprisoned upon arrival. (Dkt. No. 11 at 3–4.)

Respondents argue the United States Department of State has received "diplomatic assurances" from Cameroon that noncitizens removed to that country will not be subjected to persecution or torture. (Dkt. No. 20 at 2.) Respondents cite no authority for this assertion other than their own internal guidance (*id.* at 7–8) and have provided Petitioner no ability to challenge the validity of these assertions.[2]

---

[2] Both parties discuss the potential impact of *D.V.D. v. U.S. Department of Homeland Security*, a case from the District of Massachusetts addressing whether the Government's guidance and diplomatic assurances are sufficient to satisfy due process. (*See* Dkt. Nos. 1 at 19–20, 32; 20 at 8–11, 16–21.) On September 29, 2026, the Supreme Court granted the Government's application for a stay of the district court's order and judgment, and granted certiorari on the following questions: "(1) Whether the district court had jurisdiction over Respondents' claims. (2) Whether the district court had authority to enter class wide declaratory relief and [Administrative Procedure Act] vacatur under 8 U.S.C. § 1252(f)(1). (3) Whether the Government's guidance on third-country removals is unlawful under 8 U.S.C. § 1231(b), the Due Process Clause, or FARRA/CAT and its implementing regulations. (4) Such other questions that the Government determines are appropriate for proper disposition of the case." *U.S. Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 2026 WL 2917860, at *1 (U.S. Sept. 29, 2026). The Supreme Court's order offered no commentary on the district court's analysis and provided no guidance for lower courts regarding the issues before the Court in this case. For example, it is unclear whether the Supreme Court believes the district court's analysis was flawed or whether it lacked authority to enter classwide declaratory relief. Without any clear direction, the current poster of the *D.V.D.* litigation offers little guidance.

"The Fifth Amendment requires that ICE provide a meaningful opportunity for [P]etitioner's claim of fear to be heard[,] and "[t]he guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Aden*, 409 F. Supp. 3d at 1010. Assurances from Cameroon that Petitioner will not be subject to persecution or torture in that country are insufficient to satisfy due process. *Id.* (the burden is on the government to provide Petitioner "a meaningful opportunity to be heard on asylum and withholding claims[]"). Accordingly, Respondents must reopen Petitioner's removal proceedings to provide her a meaningful opportunity to be heard before they can proceed with third country removal.

**B. There is No Likelihood of Removal in the Reasonably Foreseeable Future**

*Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); see *also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

Petitioner provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. While Petitioner has

not yet been detained for the presumptively unreasonable six month period, the *Zadvydas* grace period ended "six months following the entry of the order of [Petitioner's] removal and three months following [her] 90-day removal period[.]" *Tran v. Bondi*, Case No. CV-25-01897-JLR, 2025 WL 3140462 (W.D. Wash. Nov. 10, 2025). Petitioner was ordered removed in absentia in 2013. (Dkt. Nos. 21 at 3; 23-1 at 2.) Further, Petitioner cannot be removed to Eritrea given the IJ's order granting withholding of removal to that country. Accordingly, Petitioner has met her burden, offering sufficient evidence to establish there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* Respondents argue Petitioner's removal is likely in the reasonably foreseeable future because Petitioner is subject to a final removal order and Respondents have identified Cameroon as a third country to which Petitioner can be removed. (Dkt. No. 20 at 13.) However, as already identified, see Section III(A) *supra*, removal to Cameroon is impermissible because due process requires Respondents to re-open removal proceedings to provide a full and fair hearing in front of a neutral decisionmaker.

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful, and her release is appropriate. *See Yuksek v. Bondi*, Case No. 2:25-CV-02555-DGE-GJL, 2026 WL 60364 (W.D. Wash. Jan. 8, 2026) (allowing release upon a finding that removal was not reasonably foreseeable).

## IV. ORDER

For the reasons set forth above, the Court GRANTS Petitioner's writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody subject to reasonable conditions of supervision within **TWENTY-FOUR (24) hours** of this order. Also within **TWENTY-FOUR (24) hours**, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.
2. Upon release, Respondents shall return to Petitioner her personal identification card, her work authorization card, social security card, and any other document(s) that evidence her ability to remain and obtain employment in the United States.
3. Petitioner's removal to Cameroon is PROHIBITED and STAYED. Respondents SHALL NOT remove Petitioner to Cameroon, as identified in Dkt. No. 7.
4. Should Respondents seek to remove Petitioner to a country other than Eritrea, Respondents SHALL move to re-open Petitioner's removal proceedings to allow Petitioner to present a full claim for relief under 8 U.S.C. § 1231(b)(3).[3]

Dated this 3rd day of November, 2026.



David G. Estudillo
United States District Judge

[3] In the event Petitioner is re-detained after her release pursuant to this order, any claim by Petitioner that he has been unlawfully re-detained shall be presented as a new habeas petition.